# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CALVIN HORNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 CV 8080 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| HOME DEPOT U.S.A., INC. and | ) |
| ELECTRIC EEL MANUFACTURING | ) |
| COMPANY, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In this diversity action, plaintiff Calvin Horne seeks to recover for injuries sustained when he was operating a drain-cleaning machine manufactured by defendant Electric Eel Manufacturing Company, Inc. ("Electric Eel") and rented to Horne by defendant Home Depot U.S.A., Inc. ("Home Depot"). Defendants filed motions for summary judgment under Federal Rule of Civil Procedure 56. Horne moves to bar defendants' mechanical-engineering expert, Dennis Brickman. For the reasons explained below, defendants' motions for summary judgment are granted, and Horne's motion to bar defendants' expert is denied as moot.

# MATERIAL FACTS[1]

On July 21, 2017, Horne observed that his toilet was clogged and that the main sewer drain outside his house was backing up and needed to be cleaned out, so he went to the Home Depot store in Homewood, Illinois, to rent an electric rodder, also known as a drain cleaner. Horne went to the tool-rental department and told a female Home Depot employee that he needed an electric rodder. According to Horne, that employee selected a machine and presented it to him; he "fill[ed] out the paperwork," and the entire rental process took "maybe" ten minutes. (ECF No. 151-3, Dep. of Calvin Horne at 155-56, 187.)[2] Horne signed a contract with Home Depot (the "Rental Contract") for the rental of a drain-cleaning machine.[3] Under the

---

[1] Horne's responses to defendants' Local Rule 56.1(a)(3) statements of material fact contain a number of denials, none of which are properly supported by specific references to the record as required by the local rule. Therefore, the Court deems plaintiff to have admitted all properly-supported material facts in defendants' statements. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (when a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the local rule, those facts are deemed admitted for purposes of the motion). The Court has also disregarded several immaterial facts contained in the parties' Local Rule 56.1 statements, as well as statements and/or responses that are not supported by the evidence cited.

[2] Horne's version of the transaction differs from that of another Home Depot employee who says that he was involved. According to Horne, he was assisted only by a female employee and was offered no verbal instruction or tutorial on how to operate the drain-cleaning machine. (Horne Dep. at 157-58.) But a male employee named Philip Boronda says that he was working at the Homewood store when Horne rented the machine that day and that he "tried to qualify" Horne to use it. (ECF No. 177-1, Dep. of Philip Boronda at 53.) Boronda says that another employee named Lavincia McBride, who was assisting Horne, requested Boronda's help in finding the right tool for Horne's needs. According to Boronda, he asked Horne what he needed a machine for, and Horne replied that he needed it for "a main." Boronda selected the drain cleaner, plugged it into a nearby power outlet, made sure it was in working order, and demonstrated how to use it. Boronda then "stepped back" and let McBride handle the remainder of the rental process. (*Id.* at 53-58.)

[3] The machine consists of a coiled wire cable, or "snake," to the end of which spear-type cleaning tools can be attached. The cable is connected to a motor and mounted on a steel frame with wheels.

heading "Rental Equipment," the Rental Contract specified that the equipment had Part Number 0448505995 and the Description "Drain Cleaner 100' x 3/4.'" (Horne Dep., Ex. F1, Rental Contract, at 1.) The second page of the Rental Contract, under the heading "Safety Message," stated: "Do not force snake cable into drain. Gradually feed and rotate snake cable into drain. Application of excessive force can cause snake cable to break." (*Id.* at 2.)

On May 2, 2017, Electric Eel had assembled, inspected, and shipped to the Homewood Home Depot the electric drain cleaner with the Part Number corresponding to that in the Rental Contract, which was a Model R machine with the Serial Number 16766. That particular machine was manually assembled by an Electric Eel employee named Richard Berry. After assembly, Berry inspected and tested the machine's foot pedal, which controls the motor. When the pedal is pressed down, the motor comes on, and when the pedal is released, the motor stops. Perry confirmed that the foot pedal of the machine operated properly. He also inspected and tested the forward/reverse switch and confirmed that the switch operated properly. On May 7, 2017, after the machine had been rented, operated, and returned by another customer the previous day, the machine was inspected by Home Depot, and it was determined that the foot pedal was "leaking air." Philip Boronda testified at deposition that he repaired the machine on May 10, 2017 by replacing the foot pedal. (Boronda Dep. at 61-62.)

Prior to July 2017, Horne had rented an Electric Eel Model R drain cleaner from Home Depot anywhere from two to four times and each time had used the machine to clean out the same sewer drain outside his house in South Holland, Illinois. Horne says that the drain cleaner he rented on July 21, 2017 appeared to be "different" from those he had rented on prior occasions because it was "raggedy" and "kind of old," had peeling paint and rust and a "dingy yellow" plastic cover over its cable; and did not have a blue frame or warning stickers. (Horne

3

Dep. at 74-75, 150-55, 214-15, 222-24.) Nonetheless, Horne did not complain about its condition, and he proceeded with the rental because the Home Depot employee had chosen it and he figured "she knows," and it seemed fine to use. (*Id.* at 155-56, 171.)

Horne took the drain-cleaning machine to his house and read the operating manual that he had been given with the machine. Then he began operating the machine in an attempt to unclog his outdoor sewer drain pipe. Two of Horne's friends, Perry Bennett and Reginald Tolliver, were present while Horne was operating the cleaner. Horne testified at his deposition that the following occurred. After positioning the machine near the drain, he began manually lowering the machine's cable into the drain until it hit the bottom of the drain hole, which was approximately three to four feet underground (after this point, the drain pipe made a turn). The machine's forward/reverse switch (which the parties sometimes call the "toggle" switch), which controls the direction of the cable's rotation, was in the forward position. Horne then pressed on the machine's foot pedal in order to cause the cable to further spool out of the machine and into the section of drain beyond the turn. Once the cable made the turn, he took his foot off the pedal and began to manually feed the cable further into the drain until the cable hit an obstruction, and then put his foot back on the pedal to get the cable through the obstruction. The cable was about seven to nine feet within the drain at that time. As the cable was spooling out of the machine, Bennett noticed a "bend or kink" in the cable and told Horne to stop trying to insert any more cable into the drain because he thought that the kink might crack the pipe. Horne then saw the kink, so he took his foot off the pedal and his hands off the cable.

Horne wanted to remove the cable from the drain pipe and return the machine to Home Depot, so he moved the toggle switch from forward to reverse. He placed his foot on the pedal, but the cable did not reverse out of the drain, so he took his foot off the pedal and decided to

manually pull the cable out of the drain. Right after he began to do so with both hands and "barely" any force, the cable wrapped itself around his right wrist, and the machine flipped over while also flipping him over onto his back. Tolliver's testimony on these points largely tracks Horne's. Tolliver testified that after Bennett noticed the kink and told Horne to stop, Horne told Tolliver to flip the toggle switch to the reverse position, and he did so. Nothing happened when Horne stepped on the foot pedal, so Horne began to manually remove the cable. "Next thing you know, whomp, . . . the cord wraps around him, flip[s] him, the machine." (ECF No. 168-9, Dep. of Reginald Tolliver at 103.) As for Bennett, he says that he noticed a kink in the cable right after it spooled out of the machine, and told Horne that it did not "look right." Horne stopped operating the machine to look at it, and "maybe five seconds later he was on the ground." (ECF No. 172-8, Dep. of Perry Lavell Bennett at 94-95.) Between the time Bennett pointed out the kink and the time Horne flipped onto the ground, Bennett was distracted and did not see what happened. Paramedics arrived shortly thereafter and brought Horne to Ingalls Hospital for treatment. He was later transferred to Stroger Hospital.[4]

This action was filed in the Circuit Court of Cook County on August 21, 2017, and it was removed to this court in November 2017. Horne asserted claims against Home Depot and Electric Eel for negligence, strict liability, and breach of express and implied warranties, and later agreed to dismiss with prejudice the strict-liability claim against Home Depot. On May 10,

---

[4]Horne testified as follows about his injuries. He suffered a laceration on the middle knuckle of his right index finger and was transferred to Stroger Hospital ("Stroger") because there was no "hand specialist" at Ingalls Hospital. (Horne Dep. at 332-34.) He also asserts that his shoulder was injured in that it "still hurt[s] today." (*Id.* at 332.) The laceration to Horne's finger was repaired at Stroger, but his shoulder was not examined. Horne was discharged from Stroger the next day, July 22, 2017. Six days later, Horne went to a physician at Midwest Orthopaedics, who examined his hand and told Horne that gangrene had developed and that there was low blood flow in the right index finger. On August 10, 2017, Horne's finger was partially amputated.

5

2018, Horne amended the complaint to add a claim for spoliation, alleging that Home Depot agreed to preserve the subject Electric Eel Model R machine but failed to do so. The claim is based on the fact that Home Depot informed Horne in April 2018 that the machine had been stolen.

## DISCUSSION

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if a reasonable jury could find for either party. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). Rule 56 imposes the initial burden on the movant to inform the court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant's initial burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (internal quotation marks and citation omitted). The nonmovant need not produce evidence in a form that would be admissible at trial, but he must go beyond the pleadings to demonstrate that there is evidence upon which a jury could find in his favor. *Id.* at 1168-69 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

**B.     Home Depot's Motion**

Home Depot contends that it is entitled to summary judgment because the Rental Contract contains an exculpatory clause that precludes Horne's claims. The Rental Contract states in pertinent part:

> TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER INDEMNIFIES, RELEASES, WAIVES AND HOLDS THE HOME DEPOT HARMLESS FROM AND AGAINST ALL CLAIMS, LOSSES, EXPENSES (INCLUDING ATTORNEY'S FEES AND EXPENSES), LIABILITIES AND DAMAGES (INCLUDING PERSONAL INJURY, DEATH, PROPERTY DAMAGE, LOST PROFITS, AND SPECIAL, INCIDENTAL AND CONSEQUENTIAL DAMAGES) IN ANY WAY CONNECTED WITH THE EQUIPMENT, ITS OPERATION OR USE, OR ANY DEFECT OR FAILURE THEREOF OR A BREACH OF THE HOME DEPOT'S OBLIGATIONS HEREIN.

(Rental Contract ¶ 9.)[5]

The parties agree that Illinois law governs this dispute. While contractual provisions that release parties from future liability, commonly referred to as exculpatory clauses, do not enjoy "special favor" under Illinois law, *Meyers v. Rockford Systems, Inc.*, 625 N.E.2d 916, 921 (Ill. App. Ct. 1993), they are enforced unless (1) it would violate settled public policy of Illinois to do so; (2) there is something about the social relationship of the parties that militates against upholding the clause; or (3) there is a substantial disparity in the parties' bargaining positions,

---

[5]The Rental Contract also states:

> DURING THE RENTAL PERIOD, CUSTOMER ASSUMES ALL RISKS ASSOCIATED WITH AND FULL RESPONSIBILITY FOR THE POSSESSION, CUSTODY AND OPERATION OF THE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO, RENTAL CHARGES, CUSTOMER TRANSPORT, LOADING AND UNLOADING, PROPERTY DAMAGES AND DESTRUCTION, LOSSES, PERSONAL INJURY, AND DEATH.

(Rental Contract ¶ 7.)

*Garrison v. Combined Fitness Ctr., Ltd.*, 559 N.E.2d 187, 189-90 (Ill. App. Ct. 1990).[6] Home Depot contends that the exculpatory clause in the Rental Contract that Horne undisputedly signed is valid and enforceable and that no exceptions to its enforceability apply.

Horne raises several arguments to challenge the enforceability of the exculpatory clause. The first is that Home Depot materially breached the Rental Contract by providing him with the "wrong" drain cleaner, so it cannot benefit from the terms of contract, including the exculpatory clause. Horne contends that Home Depot provided him an "old, rusty, raggedy machine" that did not resemble the exemplar Electric Eel Model R machine depicted in photographs produced in discovery or those that Horne had rented in the past, and he notes that the Rental Contract does not refer to the subject drain cleaner by brand name or model. (ECF No. 170, Pl.'s Resp. Home Depot's Mot. at 5.) This argument misses the mark. Horne fails to explain in what sense he was provided the "wrong" drain cleaner. His nebulous assertion also contradicts his own allegations that he rented and operated an Electric Eel Model R machine, specifically Part Number 0448505995.[7] (ECF No. 50, 4th Am. Compl.) Allegations in a complaint are binding admissions, so Horne may not attempt to create a fact issue on summary judgment by vaguely suggesting for the first time in this litigation that he did not rent an Electric Eel Model R machine. *See Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001) ("It is a well-settled rule that a party is bound by what it states in its pleadings.") (internal quotation marks and citation omitted); *Jackson v. Marion Cty.*, 66 F.3d 151, 153 (7th Cir. 1995).

---

[6]It is also often stated that exculpatory clauses are strictly construed against the party they benefit, but it is equally true that this rule does not apply where the language of such a clause is plain and clear, thus requiring no interpretation. *See J. B. Stein & Co. v. Sandberg*, 419 N.E.2d 652, 655 (Ill. App. Ct. 1981).

[7]Indeed, Horne's spoliation claim is based on Home Depot's loss of that specific machine.

Horne also maintains that the exculpatory clause is against Illinois's public policy. He reasons that certain provisions of Article 2 of the Uniform Commercial Code ("UCC"), codified at 810 ILCS 5/2-314, apply to equipment leases and imply in those leases a warranty that goods must be fit for the ordinary purposes for which they are used. Because the Illinois Supreme Court has held that the benefits of a statute may not be waived by an individual where the statute was enacted for the protection of the public generally, says Horne, the exculpatory clause in the Rental Contract violates established public policy. The Court is unpersuaded. The UCC is not a consumer-protection statute; it states that its purposes are to simplify, clarify, and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and to make uniform the law among the various jurisdictions. 810 ILCS 5/1-103. Horne cites no authority for the proposition that the UCC was enacted for the protection of the public generally.[8]

Horne next contends that the bargaining positions of the parties reflect a substantial disparity. Exculpatory agreements are not enforced where there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of the plaintiff—for example, where a monopoly exists, or the plaintiff did not have a reasonable alternative. *White*

---

[8]Horne also argues that "no Illinois court has previously approved an exculpatory clause in a mass-market big box retail transaction." (Pl.'s Resp. Home Depot's Mot. at 8.) This argument inverts the analysis. Courts start from the axiom that public policy "strongly favors" the freedom to contract, and the general rule is to enforce exculpatory clauses *unless* an exception applies. *Harris v. Walker*, 519 N.E.2d 917, 919 (Ill. 1988). Under Illinois law, a private contract will not be invalidated on public policy grounds unless it is "clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare." *Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1180 (Ill. 2005). Horne cites no decisions in which a court applying Illinois law has declined to enforce an exculpatory clause in a contract similar to the Rental Contract, nor does he cite any constitutional or statutory provision voiding such clauses.

*v. Vill. of Homewood*, 628 N.E.2d 616, 619-20 (Ill. App. Ct. 1993). Horne characterizes himself as a "proverbial David, . . . a man with very minimal post high school education, who walked into Home Depot, an actual retail Giant," and says that he was "under pressure to alleviate the issue with [his] toilet and to prevent further reasonable harm, including but not limited to, raw sewage in the home or broken pipes." (Pl.'s Resp. Home Depot's Mot. at 9.) The rental process took less than ten minutes, he adds, and he never read the provisions of the Rental Contract. He concludes that Home Depot therefore "had all the bargaining power." (*Id.*)

The Court disagrees.[9] This is not a situation where Horne was economically (or otherwise) compelled to rent a drain cleaner from Home Depot. Despite an unpleasant plumbing situation, he nonetheless had the options of renting elsewhere or calling a sewer-cleaning service. Horne does not assert that he was pressured into signing the Rental Contract, that he did not understand any facet of the transaction, that he had a special relationship with Home Depot, or that Home Depot provides a service that is a public necessity. He does say that he did not read the terms and conditions of the contract, but he does not dispute that he was presented with those terms and had the opportunity to read them, so his choice does not implicate his bargaining power. *See Hawkins v. Capital Fitness, Inc.*, 29 N.E.3d 442, 446 (Ill. App. Ct. 2015) ("An individual who has had an opportunity to read a contract before signing, but signs before reading, cannot later plead lack of understanding.") (internal quotation marks and citation omitted). Horne fails to demonstrate that there was a such a disparity in the parties' bargaining power that he was deprived of free choice. *See Harris*, 519 N.E.2d at 919-20 (holding that

---

[9]Horne also cites no Illinois law in support of his argument, which generally seems to be that a contract between an individual consumer and a "commercial entity" establishes a substantial disparity in bargaining positions.

plaintiff was not in an unequal bargaining position where he had agreed to accept the risks involved in renting a horse for riding); *Schlessman v. Henson*, 413 N.E.2d 1252, 1254 (Ill. 1980) ("While it is obvious that plaintiff would not have been allowed to use the racetrack had he not signed the release, plaintiff was under no economic or other compulsion to sign the release in order to engage in amateur auto racing . . . ."); *Hamer v. City Segway Tours of Chi., LLC*, 930 N.E.2d 578, 582 (Ill. App. Ct. 2010) ("[T]here was no disparity of bargaining power because if Hamer disagreed with the exculpatory clause, she could simply refuse to join the tour.").

Horne's fourth argument is that the exculpatory clause should not be enforced because it contradicts the Rental Contract's first paragraph, in which Home Depot promised to provide equipment "in good working condition." He relies on two Illinois decisions, *Shorr Paper Products, Inc. v. Aurora Elevator, Inc.*, 555 N.E.2d 735 (Ill. App. Ct. 1990), and *Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, 820 N.E.2d 411 (Ill. 2004), to the effect that a party cannot contract to act in a certain manner and then exculpate itself from liability for breach of that very promise because otherwise its contractual duties would be illusory. But Horne then fails to develop his argument by examining what kind of liability is at issue here. Home Depot also gives the matter short shrift, simply replying that the authority Horne cites is inapplicable because he does not bring a claim for breach of contract. (ECF No. 178, Home Depot's Reply at 4-5.)

Putting the spoliation claim to one side, the claims against Home Depot are for breach of warranty and negligence. The principle articulated in *Shorr* and *Jewelers Mutual* does not apply to the negligence claim because that claim is not contractual. *See Geimer v. Bank of Am., N.A.*, 784 F. Supp. 2d 926, 934 (N.D. Ill. 2011). The breach-of-warranty claim, however, appears to sound in contract. (Again, Horne provides no analysis beyond simply citing the two decisions

11

and then stating in conclusory fashion that they bar enforcement of the exculpatory clause.) Assuming that the warranty claim is contractual in nature, *Shorr* and *Jewelers Mutual* could apply if the Rental Contact purported to entirely exculpate Home Depot for breach of its promise to provide a drain cleaner that was in good working condition. The exculpatory clause, standing alone, appears to do so. But the Rental Contract also contains the following, more specific, provision: "Should The Home Depot fail to meet any of its obligations under this Agreement, Customer's only remedy is repair or replacement of deficient Equipment or to receive, at The Home Depot's option, a rental charge adjustment."[10] (Rental Contract ¶ 3.) The parties do not discuss this provision, but the Court must read the entire contract in context and construe it as a whole, viewing each provision in light of the others and giving effect to a more specific provision when it conflicts with a general provision. *Empress Casino Joliet Corp. v. W.E. O'Neil Const. Co.*, 68 N.E.3d 856, 869 (Ill. App. Ct. 2016); *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. 1997). Because the exculpatory clause, when read together with the provision in Paragraph 3, limits Home Depot's contractual liability but does not entirely exculpate Home Depot, the principle set out in *Shorr* and *Jewelers Mutual* does not bar its enforceability as to the breach of warranty claim. *See Willmott v. Fed. St. Advisors, Inc.*, No. 05 C 1124, 2006 WL 3743716, at *8 (N.D. Ill. Dec. 19, 2006).

In Horne's final challenge to the enforceability of the exculpatory clause, he maintains that his injury resulted from a danger beyond the risks encompassed by the clause. The scope of the exculpatory clause depends on the foreseeability of a specific danger, and the relevant inquiry is not whether Horne could foresee Home Depot's exact act of alleged negligence, but

---

[10]Horne does not seek these remedies.

whether he knew or should have known that the accident was a risk encompassed by the release. *See Hawkins*, 29 N.E.3d at 447. Horne argues that a jury could reasonably conclude that he did not foresee that he could have been injured "because of the pre-existing kink in the cable" or "due to the malfunctioning and defective foot pedal and/or reverse switch." (Pl.'s Resp. Home Depot's Mot. at 11-12.) He frames the inquiry too narrowly. The precise manner in which the injury occurred need not have been contemplated by the parties when contracting. *Garrison*, 559 N.E.2d at 190. The focus is on the *range* of dangers. *Id.*; *see also Neumann v. Gloria Marshall Figure Salon*, 500 N.E.2d 1011, 1013 (Ill. App. Ct. 1986) ("The individual must reasonably contemplate the range of possible dangers to which []he subjects [him]self, thus enabling h[im] to minimize the risk by employing a great degree of caution."). The Rental Contract states that Horne waived claims against Home Depot, including for personal injury, "in any way connected with the equipment, its operation or use, or any defect or failure thereof." (Rental Contract ¶ 9.) It also provides that Horne assumed all risks associated with the operation of the equipment, including personal injury. (*Id.* ¶ 7.) Horne seeks damages for injuries resulting from his operation of the drain cleaner. Those potential injuries clearly fall within the parameters of the exculpatory clause, and there is nothing in the record from which one could conclude otherwise.

Horne has failed to show that any facts or circumstances exist here that would render the exculpatory clause unenforceable. The clause therefore bars Horne's substantive claims against Home Depot. As for spoliation, because that claim is derivative of his other claims, *Babich v. River Oaks Toyota*, 879 N.E.2d 420, 426 (Ill. App. Ct. 2007), and requires him to show that the loss of the evidence was the proximate cause of his inability to prove his substantive claims against Home Depot, *Wofford v. Tracy*, 48 N.E.3d 1109, 1117 (Ill. App. Ct. 2015), which he cannot do, Home Depot is entitled to summary judgment on that claim as well.

C.     **Electric Eel's Motion**

Electric Eel argues that it is entitled to summary judgment on Horne's claims because Horne has failed to present sufficient evidence of the existence of a design or manufacturing defect in the machine that he used. Electric Eel emphasizes that Horne has chosen not to present an expert witness in this case to demonstrate a defective or dangerous condition in the machine, that such condition existed when the machine left Electric Eel's control, or that it caused Horne's injuries. It also argues that Horne's warranty claim fails because there is no contractual privity between Horne and Electric Eel.

In response to Electric Eel's motion, Horne first again asserts vaguely that he "denies he received the Electric Eel Model R referenced in the Rental Contract." (ECF No. 166, Pl.'s Resp. Electric Eel's Mot. 2.) The upshot of this assertion is unclear; Horne fails to develop the argument.[11] In any event, as discussed above, Horne may not contradict his admission that he rented and operated the machine to which the Rental Contract refers.

Horne also contends that he need not present expert testimony and that his testimony alone is sufficient to withstand summary judgment. To recover on a strict-liability claim, a plaintiff must prove that his injury resulted from an unreasonably dangerous condition of the product at issue and that the condition existed at the time the product left the manufacturer's control. *Ralston v. Casanova*, 473 N.E.2d 444, 449 (Ill. App. Ct. 1984). A plaintiff asserting negligence in a product-liability action must establish the traditional elements of the existence of

---

[11]In his motion to bar defendants' expert, Horne faults the expert for making "no attempt to account for . . . the possibility that [Horne] was not provided the contracted for Electric Eel Model R, but rather some other model manufactured by Electric Eel *or other manufacturer*." (ECF No. 175, Pl.'s Mot. Sanctions at 12-13 (emphasis added).) That is a bewildering argument, given that Horne has chosen to sue Electric Eel and opposes its motion for summary judgment.

a duty of care owed by the defendant, a breach of that duty, an injury that was proximately caused by that breach, and damages. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007) ("[I]n a negligence claim, a defendant's fault is at issue in addition to the condition of the product."). In order to prove a breach of warranty, a plaintiff must show that the product at issue was defective and that the defect existed when the product left defendant's control. *Alvarez v. Am. Isuzu Motors*, 749 N.E.2d 16, 22 (Ill. App. Ct. 2001). Thus, the cornerstone of all of Horne's claims against Electric Eel is the existence of a defect in the drain cleaner at the time it left Electric Eel's control. *See Shramek v. Gen. Motors Corp., Chevrolet Motor Div.*, 216 N.E.2d 244, 247 (Ill. App. Ct. 1966). A prima facie case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or secondary causes, the product failed to perform in the manner reasonably to be expected in light of its nature and intended function. *Ralston*, 473 N.E.2d at 449.

For both strict-liability and negligence claims, "the plaintiff must demonstrate a causal relationship between the injury and the manufacturer's product." *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 770 (7th Cir. 2015) (applying Illinois law). "The causal relationship can be proven by circumstantial evidence. But in order to get to the jury, the plaintiff must demonstrate more than a mere possibility that the product caused the injury. Rather, the plaintiff must come forward with evidence justifying an inference of probability." *Id.* (citations omitted); *see also Baltus v. Weaver Div. of Kidde & Co.*, 557 N.E.2d 580, 587-88, (Ill. App. Ct. 1990) (while a prima facie case of strict liability possibly may be shown absent the defective product itself or absent expert testimony concerning a specific defect, plaintiff nonetheless must present some evidence to raise a material issue as to the absence of abnormal use and the elimination of

15

reasonable secondary causes, both to show the condition of the product when it left defendant's control and to show that the alleged defect proximately caused the injury).

The extent of Horne's argument that he has presented sufficient evidence to survive summary judgment is as follows:

> Calvin testified that the toggle switch and the foot pedal malfunctioned during his use of the drain cleaner. These two malfunctions are conceptually simple for a jury to understand as these two critical, yet basic features (which are similar to a gear shift and gas pedal on a vehicle) simply didn't work that day. And, since we do not have the drain cleaner itself, it is impossible to determine the specific malfunction of this machine as it existed on July 21, 2017. That said, Electric Eel assembled the drain cleaner on May 2, 2017 and shipped it to Home Depot the very same day and, within 5 days of receipt of the drain cleaner, or by May 7, 2017, the drain cleaner malfunctioned. By its own admission, Home Depot should have replaced the defective foot pedal, but did not do so. Moreover, Electric Eel specifically warned of the dangers of the alleged drain cleaner when kinks are present; and, seemingly, left Calvin with no alternative in its design other than to manually pull the kinked cable [from] the drain as the toggle switch and foot pedal both did not work properly. Had there been another safeguard in place, Calvin would not have had to manually pull the cable from the drain.

(Pl.'s Resp. Electric Eel's Mot. at 4.)

Horne fails to point to evidence that raises a material issue as to the condition of the product when it left Electric Eel's control; the absence of abnormal use and the elimination of reasonable secondary causes; or the proximate cause of his injury. When aspects of a product's design or operation are beyond the understanding of a lay person, Illinois law requires a plaintiff in a product-liability action to present expert testimony to prove that a defect was unreasonably dangerous and proximately caused the plaintiff's injuries. *Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 982-83 (N.D. Ill. 2010), *aff'd*, 659 F.3d 584 (7th Cir. 2011); *Henry v. Panasonic Factory Automation Co.*, 917 N.E.2d 1086, 1092-93 (Ill. App. Ct. 2009). Horne's testimony that the cable of the Electric Eel machine did not move after he switched the toggle switch to the reverse

position and placed his foot on the pedal is insufficient to create a triable issue of fact.[12] Horne characterizes these circumstances as "two malfunctions," but fails to explain why a lay person could so conclude simply from his testimony.[13] While the concept of a switch or pedal malfunctioning may be "simple," as Horne puts it, the salient issue is the nature of the machine. The Electric Eel drain cleaner is a complex and specialized piece of equipment, and its design, manufacture, features, and operation involve specialized knowledge beyond that of a lay person. Without expert testimony, jurors would simply be speculating on the elements of Horne's claims. Horne has not presented expert testimony, so Electric Eel is entitled to summary judgment. *See, e.g.*, *Show*, 697 F. Supp. 2d at 986-87 (granting defendant's motion for summary judgment where plaintiffs failed to present expert testimony on their strict-liability and negligence claims involving a vehicle stability system); *Baltus*, 557 N.E.2d at 590-91 (affirming summary judgment for manufacturer in product-liability case in which plaintiff argued that he need not present expert testimony regarding the condition of a transmission jack); *Alvarez*, 749 N.E.2d at 23-25 (affirming directed verdict for manufacturer on breach of warranty claim where plaintiff failed to present expert testimony regarding a defect in an automobile when it left the manufacturer's control, evidence of absence of abnormal use, or evidence tending to exclude possible secondary causes); *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 898 (7th Cir. 2011)

---

[12]Horne also cites the evidence of Home Depot's work on the foot pedal, but he misstates that evidence, which is that Boronda repaired the machine by replacing the foot pedal. Furthermore, Horne does not discuss the fact that during the interval between the machine's leaving Electric Eel's control and Home Depot's replacing the foot pedal, a Home Depot customer rented the machine. He also does not address the rentals that occurred during the interval between the repair and his rental.

[13]His contention that he would not have had to pull the cable out of the drain had there been "another safeguard in place" is similarly conclusory.

(affirming summary judgment for manufacturer in product-liability case in which plaintiff failed to present expert testimony to show that a scaffold was defective at the time it left the manufacturer's control and to exclude the possibility of abnormal use or reasonable secondary causes).

Because Horne's lack of expert testimony dooms his claims against Electric Eel, the Court need not address Electric Eel's argument regarding contractual privity. Likewise, the Court denies as moot Horne's motion to bar defendants' use of the report and/or testimony of their expert, Dennis Brickman, because it was not necessary for the Court to rely on that evidence in ruling on defendants' motions for summary judgment.

## CONCLUSION

Defendant Home Depot U.S.A., Inc.'s motion for summary judgment [150] is granted. Defendant Electric Eel Manufacturing Company, Inc.'s motion for summary judgment [154] is granted. Judgment will be entered in favor of defendants and against plaintiff. Plaintiff's motion for sanctions and/or to bar defendants' expert [175] is denied as moot.

**DATE**: February 12, 2019

_____
**Ronald A. Guzmán**
**United States District Judge**